UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Kristene Anne Dupont

    v.                                    Case No. Civil No. 10-cv-7-PB
                                         Opinion No. 2010 DNH 214
Michael J. Astrue,
Commissioner,
Social Security Agency

### MEMORANDUM AND ORDER

Kristene Anne Dupont filed a complaint seeking review of the Commissioner's decision not to extend the time period for reopening a prior application for disability insurance benefits ("DIB"). The Commissioner moves to dismiss this action for lack of subject matter jurisdiction, or in the alternative, to affirm the administrative law judge's ("ALJ") decision. While I conclude that I have subject matter jurisdiction, the decision is supported by substantial evidence and therefore I affirm.

### I.   BACKGROUND[1]

Dupont, proceeding pro se, filed her initial application for DIB on June 15, 2001. In that application, she alleged

---

[1] The background information is presented in detail in the parties' Joint Statement of Material Facts (Doc. No. 12) and are briefly summarized here. Citations to the Administrative Record Transcript are indicated by "Tr."

disability due to thoracic outlet syndrome and cervical and bilateral shoulder girdle myofacial pain with an onset date of October, 31, 1996.[2]  Her date last insured was December 31, 2001.  Dupont's claim was denied initially on February 21, 2002.  Dupont did not appeal the decision, and therefore the decision became final.  See 20 C.F.R. § 404.987(a) (2010).

On July 26, 2006, Dupont filed a second DIB claim, alleging the same onset date of October 31, 1996.  Due to the overlap in dates, Dupont's second application was treated as a petition to reopen her initial application.  This request was denied initially, and upon reconsideration.  Dupont requested a hearing, which was held on November 20, 2008 before an ALJ.

At the hearing, Dupont contended that her petition to reopen should not be deemed untimely because her mental state at the time of her first application precluded her from appealing the initial denial of her claim.  Dupont therefore asked the Commissioner to excuse her delay based on Social Security Ruling

---

[2] Thoracic outlet syndrome is an umbrella term that encompasses related syndromes that cause pain in the arm, shoulder, and neck. *Thoracic Outlet Syndrome Information*, Nat'l Inst. of Neurological Disorders & Stroke, http://www.ninds.nih.gov/disorders/thoracic/thoracic.htm (last visited Dec. 28, 2010).  The shoulder girdle is composed of the clavicles and scapulae. Stedman's Medical Dictionary 743 (27th ed. 2000).  Myofascial refers to the fascia surrounding and separating muscle tissue. Id. at 1173.

("SSR") 91-5p, which permits an extension to review a prior adverse decision "when a claimant presents evidence that mental incapacity prevented him or her from timely requesting review." Social Security Ruling 91-5p, Mental Incapacity and Good Cause for Missing the Deadline to Request Review, 1991 WL 208067, at *2.

On December 12, 2008, the ALJ issued a decision declining to grant an extension to reopen the prior application.  While the ALJ considered the applicability of SSR 91-5p, he determined that Dupont had not demonstrated any "objective or clinical evidence of depression or psychiatric problems until at least 2006" and therefore lacked good cause for extending the time limits for reopening the prior application. (Tr. 21).  Despite having made this finding, the ALJ proceeded to evaluate Dupont's condition under the five-step sequential process, concluding that Dupont was not disabled because she retained the residual functional capacity (RFC) to perform light work.[3]

---

[3] Dupont has not argued that the ALJ's recitation of the five-step sequential process amounted to a "constructive" or "de facto" reopening.  See Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1138-39 (1st Cir. 1988) (per curiam).  While the ALJ's review was extensive enough to amount to a constructive reopening, because Dupont's second application was more than four years after her first denial, the ALJ was without the authority to reopen Dupont's case constructively or otherwise unless either 20 C.F.R. § 404.988(c) or SSR 91-5p applied.  See Poisson v.

## II. ANALYSIS

Dupont challenges the ALJ's decision that she did not meet the requirements for an extension of time to reopen her initial claim under SSR 91-5p.[4] The Commissioner contends that this court lacks the subject matter jurisdiction under 42 U.S.C. § 405(g) to review the ALJ's decision. Alternatively, if this court does have the jurisdiction to review the ALJ's determination, the Commissioner argues that I should affirm the ALJ's decision because it is supported by substantial evidence.

### A. Subject Matter Jurisdiction

The Social Security Act grants district courts the jurisdiction to review only "final decisions" of the

---

Comm'r, No. 98-1566, 1998 WL 1268925, at *2 (1st Cir. Dec. 11, 1998) (per curiam). As I explain below, 20 C.F.R. § 404.988(c) (permitting reopening at any time) is inapplicable and the ALJ's conclusion that SSR 91-5p was not met is supported by substantial evidence.

[4] Dupont also contests the ALJ's RFC determination. As noted above, Dupont's most recent application alleged the same onset date as her first application. The first application became a final decision after Dupont failed to request further review. Therefore, unless Dupont could successfully reopen her 2002 application, she is precluded from filing for DIB again based on the same onset date. See 20 C.F.R. §§ 404.987–404.988. As a result, this order does not evaluate the ALJ's supererogatory reconsideration of Dupont's RFC, but instead focuses on the ALJ's decision not to reopen Dupont's 2001 application under SSR 91-5p. See supra note 3.

Commissioner. 42 U.S.C. § 405 (g). Because the denial of a request to reopen an application for DIB is discretionary, it is not final, and thus is generally not subject to judicial review. Califano v. Sanders, 430 U.S. 99, 107-09 (1977); Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 152 (1st. Cir 1989). An exception to this rule applies when the claimant presents a colorable constitutional claim. See Sanders, 430 U.S. at 109; Dvareckas v. Sec'y of Health & Human Servs., 804 F.2d 770, 772 (1st. Cir. 1986) (per curiam).

While the First Circuit has not yet addressed the issue in a published opinion, it is generally accepted that when a claimant is unrepresented "an allegation of mental impairment can form the basis of a colorable constitutional claim if the mental impairment prevented the claimant from understanding how to contest the denial of benefits." Klemm v. Astrue, 543 F.3d 1139, 1144-45 (9th Cir. 2008); Boothby v. Soc. Sec. Admin. Comm'r, No. 97-1245, 1997 WL 727535, at *1 (1st Cir. Nov. 18, 1997) (per curiam). The burden to establish a colorable constitutional claim is not an onerous one. See Boothby, 1997 WL 727535, at *1. A plaintiff whose challenge is not "wholly insubstantial, immaterial, or frivolous" may state a colorable constitutional claim. Id.

While Dupont has not formulated her challenge in due process terms, her contention that she lacked the mental capacity necessary to appeal her initial DIB determination is not "wholly insubstantial, immaterial, or frivolous."  See Klemm, 543 F.3d at 1144-45; Boothby, 1997 WL 727535, at *1.  It is undisputed that Dupont was unrepresented in her first application for DIB. Additionally, Dupont claims that she was suffering from depression following the denial of her first application, and that her depression rendered her incapable of understanding the process for review.

In support of this contention, Dupont points to the retrospective opinion of a non-treating psychiatrist and previous prescriptions for antidepressants.  While this is not overwhelming evidence, it does amount to a claim that is not "wholly insubstantial, immaterial, or frivolous."  See Boothby, 1997 WL 727535, at *1; Boettcher v. Sec'y of Health & Human Servs., 759 F.2d 719, 722 (9th Cir. 1995).  Because Dupont has sufficiently alleged a colorable constitutional claim, I have jurisdiction to review the ALJ's decision not to grant an extension to reopen Dupont's first application under SSR 91-5p.

**B.   Social Security Ruling 91-5p**

Although a determination of the Commissioner becomes final

when a claimant does not request further review, 20 C.F.R. § 404.987(a), the Commissioner may reopen an application for various reasons depending on the amount of time that has elapsed since the adverse decision, 20 C.F.R. § 404.988 (a)-(c). An otherwise final decision may be reopened by the Commissioner within twelve months for any reason, within four years if the Commissioner finds "good cause," or at any time if it was obtained by "fraud or similar fault." 20 C.F.R. § 404.988 (a)-(c). SSR 91-5p provides for an exception to these time limitations. It provides in pertinent part:

> [w]hen a claimant presents evidence that mental incapacity prevented him or her from timely requesting review of an adverse determination . . . and the claimant had no one legally responsible for prosecuting the claim . . . [the] SSA will determine whether or not good cause exists for extending the time to request review. If the claimant satisfies the substantive criteria, the time limits in the reopening regulations do not apply; so that, regardless of how much time has passed since the prior administrative action, the claimant can establish good cause for extending the deadline to request review of that action.

SSR 91-5p, 1991 WL 208067, at *2.

In determining whether a claimant lacked the mental capacity to understand the process for requesting review, SSR 91-5p counsels that the ALJ should "consider the following factors as they existed at the time of the prior administrative action: [1] inability to read or write; [2] lack of facility with the English

language; [3] limited education; [4] any mental or physical condition which limits the claimant's ability to do things for him/herself."[5]  Id.

Because it alleged the same onset date, Dupont's 2006 DIB application was treated as a request to reopen her prior 2001 application.  However, unless SSR 91-5p applied, Dupont (and the ALJ) would be prevented from reopening Dupont's 2001 application because the 2006 application was more than four years after her first unsuccessful application.[6]  See Poisson v. Comm'r, No. 98-1566, 1998 WL 1268925, at *2 (1st Cir. Dec. 11, 1998) (per curiam).  In order to overcome this delay, Dupont argued that the ALJ should extend the time limits of the reopening regulations pursuant to SSR 91-5p because her depression prevented her from seeking a review of her prior DIB denial.

In support of her claim, Dupont relied primarily on the retrospective evaluation of psychologist David Diamond.  (Tr. 45).  Diamond saw Dupont on October 30, 2008 at the behest of Dupont's attorney.  (Tr. 45, 781-84).  After reviewing DuPont's medical records, Diamond noted that it was "reasonable to

---

[5] Dupont has not argued, and it doesn't appear from the record, that any of the first three factors apply to her case.

[6] None of the circumstances permitting the ALJ to reopen "at any time" were alleged here.  See 20 C.F.R. § 404.988 (c).

attribute [Dupont]'s failure to make a timely appeal of her Social Security disability denial to what was probably at least a moderately severe major depressive episode at that time."[7] (Tr. at 784). In addition, Dupont noted that she had been prescribed Amitriptyline and Prozac prior to the denial of her first application for DIB.[8] (Tr. 50-52). The ALJ considered this evidence, but determined that Dupont had not established that she lacked the mental capacity to challenge her first adverse decision. (Tr. 17-71). As a result, the ALJ determined that he could not reopen Dupont's prior DIB application. See Poisson, 1998 WL 1268925, at *2; (Tr. 21).

The First Circuit apparently employs the familiar "substantial evidence" standard when reviewing an ALJ's determination that a claimant had sufficient mental capacity to challenge an adverse benefits ruling. See Frusher ex rel. Frusher v. Astrue, No. 10-1036, 2010 WL 3515766, at *2-4 (1st

---

[7] Diamond also noted that he "did not have the time to review all of [the record] and doesn't have the competence to interpret some of the medical, technical parts of [the record]." (Tr. 782).

[8] Prozac is indicated for the treatment of major depressive disorder and panic disorder. Physician's Desk Reference 1841 (58th ed. 2004). Amitriptyline is an antidepressant agent with mild tranquilizing properties, used in the treatment of mental depression and also used in the treatment of sleep disorders. Stedman's Medical Dictionary 59 (27th ed. 2000).

Cir. Sept. 2, 2010).  This is the case in other circuits. Stieberger v. Apfel, 134 F.3d 37, 41 (2nd Cir. 1997); Evans v. Chater, 110 F.3d 1480, 1484 (9th Cir. 1997); Shrader v. Heckler, 754 F.2d 142, 144 (4th Cir. 1985).  Therefore, the Commissioner's factual findings on Dupont's mental status are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g). Substantial evidence is evidence which a "reasonable mind, reviewing the evidence in the record as a whole, could accept . . . as adequate to support [the] conclusion."  Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). The Commissioner is responsible for resolving issues of credibility and drawing inferences from the evidence in the record.  See id.

    The ALJ's determination that Dupont did not lack the mental capacity to challenge her initial adverse determination was supported by substantial evidence.  While Dupont alleges that she suffered from severe depression at the time of her first DIB denial, there is little medical evidence to corroborate this claim.[9]  In her first application for DIB, Dupont did not allege

---

[9] In his hearing with Dupont, the ALJ remarked that he had "read these medical records dozens of times, scanning them [] specifically for allegations of anxiety, [and] depression." (Tr. 50).  However, the ALJ opined that while "there's a lot of information about your pain levels . . . there's not a lot of

that she was suffering from depression and there was no diagnosis of depression by any source prior to that period.[10]  See Irlanda Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (holding that gaps in claimant's medical record may be considered as evidence that an injury is not as severe as alleged).  The earliest indication of depression was not until well after Dupont's first application for DIB. (Tr. 407, 785-808).  Dupont herself indicated that her condition only worsened several years after her first application. (Tr. 162).

Instead of a contemporaneous indication of depression, Dupont relies primarily on the opinion of Dr. Diamond, rendered over seven years after her first application for DIB.  (Tr. 45).

---

talk about depression . . ." Id.  Dupont's attorney acknowledged this as well stating "[y]ou know, there wasn't, it's interesting that there wasn't a lot of information about depression early on in this case." (Tr. 41).  Instead, the evidence in the record tended to show that at the time of Dupont's first application Dupont was not incapacitated by depression, but had the mental and physical capacity to do things for herself.  At the time of her first application, Dupont was working part-time at an antique store as well as researching various career opportunities in interior design.  See Dupuis v. Sec'y of Health & Human Servs., 869 F.2d 622, 624 (1st Cir. 1989) (per curiam); (Tr. 32, 409).

[10] As noted above, Dupont does present some evidence that she was prescribed antidepressants prior to her first denial for DIB.  However, the amitriptyline was prescribed for overnight pain.  (Tr. 217, 529).  Also, while Dupont was prescribed Prozac once in 1999, it does not appear that she ever took the prescription.  (Tr. 50).

There were ample reasons for the ALJ to discount this opinion. See 20 C.F.R. § 404.1527(d) (detailing factors used in the evaluation of opinion evidence). First, Dupont was only examined by Diamond once, and therefore his opinion is not entitled to the controlling weight of a "treating source." See 20 C.F.R. § 404.1527(d)(2)(i) (explaining that greater weight is given to sources that have seen the claimant multiple times); (Tr. 189). Additionally, Diamond's exam was conducted seven years after the relevant time period, and is therefore of limited relevance in determining Dupont's mental state at the time of her first application. See Gonzalez-Rodriquez v. Barnhart, No. 04-1141, 2004 WL 2260096, at *1 (1st Cir. Oct. 7, 2004) (per curiam) (holding that a consultive examination was of "limited value" where it occurred "after [claimant's] insured status had expired"); (Tr. 42).[11] Finally, because Diamond was retained by the claimant's counsel (i.e. an "advocacy opinion") the ALJ was entitled to give it less weight. See Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 139 (1st. Cir. 1987); Coggon v. Barnhart, 354 F.Supp.2d 40, 53 (D. Mass. 2005).

---

[11] At the hearing the ALJ noted his reservations with the retrospective opinion of Dr. Diamond. ("[W]hat you're asking for is to place a lot of validity in Dr. Diamond, who saw the claimant on 10/30/08, which was many, many, many years after the . . . important date in this case.") (Tr. 42).

While Dupont's allegation of mental incapacity is enough to state a colorable constitutional claim, there is not enough evidence of depression to render the ALJ's decision that Dupont did not meet SSR 91-5p unsupported by substantial evidence. Dupont presents virtually no evidence of depression contemporary to her first application for DIB.  Instead, Dupont's relies on the opinion of Dr. Diamond, which the ALJ was entitled to discount for various reasons, most notably its retrospective nature.  As a result, defendant's motion to affirm the decision of the Commissioner (Doc. No. 11) is granted and plaintiff's motion to reverse the decision of the Commissioner (Doc. No. 8) is denied.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

December 28, 2010

cc:  D. Lance Tillinghast, Esq.
     Gretchen Leah Witt, AUSA